FILED'10 MAY 14 14:43 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ERNEST BECHLER; PATRICIA BECHLER;
and MIKE BECHLER,                                         Case Number CV 08-3059-CL

          Plaintiffs,                                      **ORDER**

    v.

TODD E. MACALUSO; and MACALUSO &
ASSOCIATES, APC,

          Defendants.

CLARKE, Magistrate Judge.

      In their amended complaint, Plaintiffs Ernest Bechler, Patricia Bechler, and Mike Bechler

include claims for declaratory relief, fraud, negligent misrepresentation, violation of Oregon

Unlawful Trade Practices Act, legal malpractice, and accounting. This court has jurisdiction

pursuant to 28 U.S.C. § 1332. The parties have executed written consents for entry of judgment

by a magistrate judge (#22). 28 U.S.C. § 636(c). On April 9, 2010, the court heard oral

argument on Defendants' motion for partial summary judgment [#90] and Plaintiffs' motion for

partial summary judgment [#120]. For the reasons explained, Defendants' motion is granted in

part and denied in part, and Plaintiffs' motion is granted in part and denied as moot in part.

Page 1 - ORDER

## DISCUSSION

### I. Defendants' Evidentiary Objections and Motions to Strike

Defendants seek to strike Plaintiffs' declarations or portions thereof offered on summary judgment on grounds including Plaintiffs' statements are not within their personal knowledge and do not set out facts admissible in evidence, including the statements are hearsay, the statements are outside their competency, or they are legal conclusions. Defendants also object to Plaintiffs' attempts to "verify" every allegation in their complaints.

Federal Rules of Civil Procedure 56(e)(1) provides in pertinent part that, "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In addition to the declarations filed by Plaintiffs, Plaintiffs filed a verified complaint. For summary judgment purposes, a verified complaint has the same force and effect as an affidavit.[1] McElyea v. Babbitt, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985). However, the verified complaint must be based on personal

_____

[1] Plaintiffs subsequently filed an amended complaint which is not verified. Ordinarily, an amended pleading supersedes earlier pleadings. However, because Plaintiffs amended their complaint in response to the court's order, the court will consider Plaintiffs' verified complaint as an affidavit. See Hoskins v. Haymore, No. C-96-0428 CAL, 1998 WL 470480, at *2 (N.D. Cal. Aug 5, 1998), rev'd on other grounds, 188 F.3d 513 (9th Cir. 1999) (because original complaint verified and amended complaint filed in response to court's order, court would liberally construe amended complaint to be verified as well); Lee v. Ritter, No. 1:02-CV-282, 2005 WL 3369616, at *3 (E.D. Tenn. Dec. 12, 2005) (although plaintiff filed unverified amended complaint which superseded verified complaint, court considered both complaints to determine whether plaintiff had established existence of genuine issue of material fact); Boxdorfer v. Thrivent Fin. for Lutherans, 1:09-cv-0109-DFH-JMS, 2009 WL 2448459, at *2 & n.2 (S.D. Ind. Aug. 10, 2009) (although amended unverified complaint generally supersedes all previous complaints, court considered original verified complaint for evidentiary purposes since it was a signed statement of facts equivalent to an affidavit with respect to factual matters within plaintiff's personal knowledge).

Page 2 - ORDER

knowledge and set forth specific facts admissible in evidence as any affidavit. <u>Schroeder v.</u>
<u>McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995).

The court has reviewed the verified complaint and the declarations offered by Plaintiffs
with Defendants' objections in mind.  The court will consider only those portions of the verified
complaint or the declarations which are based on the declarant's or Plaintiff's personal
knowledge, set forth facts admissible in evidence, and show the affiant is competent to testify to
the matter.  To this extent, Defendants' evidentiary objections are sustained and motions to strike
are granted.

## II. <u>Parties' Motions for Partial Summary Judgment</u>

### A. Legal Standards

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there is no genuine issue
as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(c); <u>see</u> <u>Freeman v. Oakland Unified Sch. Dist.</u>, 291 F.3d 632, 636 (9th Cir. 2002).
The court cannot weigh the evidence or determine the truth but may only determine whether
there is a genuine issue of fact.  <u>Playboy Enters., Inc. v. Welles</u>, 279 F.3d 796, 800 (9th Cir.
2002).  An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'"  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th
Cir. 2002) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof.  <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court

portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case.  Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

//

//

//

//

Page 4 - ORDER

**B. Factual Background**

Construing the facts in the light most favorable to the non-movant, a review of the record reveals the following[2]:

Plaintiffs Ernest Bechler, Patricia Bechler, and Mike Bechler bring this action against Defendants, attorney Todd Macaluso and Macaluso & Associates also doing business as Macaluso Baker & Macaluso (hereinafter "Defendants" or "Defendant Macaluso"). The amended complaint alleges that in March 2003, Plaintiffs retained Defendants to represent them concerning the unfortunate death of their son and brother Steve Bechler, a major league baseball player, in Florida, that occurred on February 17, 2003, allegedly as a result of taking the dietary supplement Xenadrine RFA-1 containing ephedra (hereinafter "Xenadrine").

Plaintiffs' son and brother, Steve Bechler, died in Florida on February 17, 2003. (Compl. ¶¶ 5, 8; E. Bechler Decl. in Opp'n 2; E. Bechler Decl. in Supp. 2.)

On February 20, 2003, Defendant Macaluso, whose office is in San Diego, California, wrote a letter to Plaintiffs Ernest and Patricia Bechler at their Medford, Oregon, home address advising them of his representation of individuals allegedly injured by Xenadrine which was made by Cytodyne Technologies Inc. (hereinafter "Cytodyne"). The letter in part discussed a class action case against Cytodyne and others in which Defendant Macaluso was plaintiffs' counsel which was coming up for trial in California (hereinafter "Park Class Action"). Defendant Macaluso requested that the Bechlers telephone him. (Compl. ¶¶ 10-11; Campbell Decl. Re: Excerpts Ex. 1 at 15.) In the latter part of February 2003, Plaintiffs Ernest and Patricia

---

[2] Plaintiffs' verified complaint is 110 pages long and contains 56 pages of "General Allegations." The court will include only those facts pertinent to the motions before the court and necessary for an understanding of the court's ruling.

Bechler telephoned Defendant Macaluso from their home in Medford, Oregon.   Defendant

Macaluso discussed the Bechlers retaining his firm to pursue a wrongful death case against

Cytodyne.   The Bechlers advised Defendant Macaluso that Steve Bechler had died married to

Kylie Bechler, who was being appointed as Personal Representative for the Estate of Steve

Bechler to pursue a wrongful death case on behalf of the Estate.   Defendant Macaluso advised

the Bechlers that this posed no problem to the Bechlers' own wrongful death action against

Cytodyne since they were the parents of Steve Bechler.  (Compl. ¶ 11.)

On March 12, 2003, Defendant Macaluso traveled to Medford, Oregon, and met with

Plaintiffs, during which a Contingent Fee Agreement (hereinafter "the Agreement") was executed

between Plaintiffs Ernest and Patricia Bechler and Macaluso Baker & Macaluso.   Plaintiff Mike

Bechler is not a signatory to the Agreement.  (Compl. ¶ 12 & Am. Compl. Ex. A; Macaluso Decl.

¶ 2.)  In response to the Bechlers' concerns regarding the appointment of Kylie Bechler as

personal representative for the Estate, Defendant Macaluso again advised the Bechlers that the

appointment of Kylie Bechler, as the personal representative of the probate estate of  Steve

Bechler, would have no legal effect on their ability to pursue their own independent wrongful

death action against Cytodyne.  (Compl.  ¶ 17.)  The Agreement provides in part the following:

"DEFENDANT:  Cytodyne Technologies, Inc."; "Client hereby retains Macaluso Baker &

Macaluso as their attorneys at law to represent them in enforcing Client's claim or causes of

action against all of the persons or entities who may be liable to Client, for injuries and damages

sustained on or about February 17, 2003"; and  "Attorneys accept said employment and agree to

take steps as are necessary and reasonably advisable to enforce Clients rights."   The Agreement

provides the following additional pertinent provisions:  first,  a 33-1/3 % attorney fee of "the total

Page 6 - ORDER

amount recovered from any source of recovery" if settlement is effected prior to a complaint

being filed and a 40 % fee of total recovery once a complaint is filed.  (Am. Compl. Ex. A at 1.)

Second, "If no recovery is obtained, no fee shall be payable to the Attorneys."  Third, "Attorneys

may, in their discretion, employ investigators or experts whose fees shall be chargeable as

advanced costs.  Associate counsel may be employed at the discretion of Attorneys at no

additional expense to Client."  (Am. Compl. Ex. A at 2.)  Fourth,

> 14.    Attorneys agree to advance such costs and fees as may be needed,
> as determined in Attorney's sole discretion, in furtherance of this matter.  Such
> costs shall be payable to Attorneys from any source of recovery, if any, prior to
> disbursing any monies to Client or Attorneys.  Upon written notice, the Attorneys
> reserve the right to require the clients to advance future costs.

Finally, the Agreement provides:  "Client may discharge Attorneys at any time.  In the event that

Client does discharge Attorneys, client is immediately liable for all fees and costs incurred.  Fees

will be computed at an hourly basis of attorneys' work and secretarial work based at a rate

between $200.00 and $300.00."  (Am. Compl. Ex. A at 3.)

Defendant Macaluso declares that he explained the following to the Bechlers prior to

execution of the Agreement:

> · That my firm and I (the "Macaluso Defendants") would be taking the
> Bechlers' case and that the Contingency Fee Agreement (the "Agreement")
> outlined the terms of the Macaluso Defendants' representation.
> · If the Macaluso Defendants were unable to recover anything in the
> case, the Bechlers would not owe them a fee.
> · By signing the Agreement, the Bechlers were agreeing to pay the
> Macaluso Defendants 33 and 1/3 of whatever was recovered.
> · If the Macaluso Defendants filed suit or a claim, the Bechlers were
> agreeing to increase the Macaluso Defendants' fee to 40% of whatever was
> recovered.
> · The Macaluso Defendants would be advancing costs such as court
> fees, copying costs, travel expenses, and expert witness fees.
> · The Macaluso Defendants would take those costs from any settlement

or award that the Bechlers received, but the Bechlers would not be required to pay the Macaluso Defendants for those costs if they did not recover.

· The Bechlers could end their relationship with the Macaluso Defendants at any time, but would be required to pay the Macaluso Defendants' fees and costs.

(Macaluso Decl. ¶ 2)  In the Agreement, the "ADDENDUM " directly above Plaintiffs Ernest

Bechler's and Patricia Bechler's signatures provides in part:  "THE TERMS OF THIS

AGREEMENT HAVE BEEN EXPLAINED TO ME AND I UNDERSTAND THEM."  (Am.

Compl. Ex. A at 3.)  In his declaration, Ernest Bechler declares:

> Defendant Todd Macaluso made only a few statements concerning the contingency fee percentage set forth in this Contingency Fee Agreement and advised my wife and I that we would not owe his law firm any attorney fees, if he and the law firm were unsuccessful in the prosecution of the wrongful death action claim against Cytodyne Technologies, Inc. for the death of our son, Steve Bechler.

(E. Bechler Decl. in Supp. at 4; E. Bechler Decl. in Opp'n at 4; see P. Bechler Decl. in Supp. at 4;

P. Bechler Decl. in Opp'n at 4.)  In their declarations, the Bechlers state:

> There was no discussion with Defendant Todd Macaluso, at all, about his pursuing a claim under the provisions of the Contingency Fee Agreement against the Estate of Steven Bechler and/or Kylie Bechler, the Personal Representative of the Estate of Steven Bechler, for any right that my wife or I might have to recover a portion of any wrongful death action recoveries eventually obtained by Kylie Bechler, as Personal Representative of the Estate of Steven Bechler.

(E. Bechler Decl. in Supp. at 4-5; E. Bechler Decl. in Opp'n at 4-5; see P. Bechler Decl. in Supp.

at 4-5; P. Bechler Decl. in Opp'n 4-5.)

Defendant Macaluso did not provide Plaintiffs Ernest and Patricia Bechler with the

Oregon State Bar Approved Model Explanation of Contingent Fee Agreement (hereinafter

"Model Explanation"), see infra, and have them sign it.  Defendant Macaluso did not orally

explain that the Agreement contained a 24-hour right to cancel provision with no obligation or

Page 8 - ORDER

that Plaintiffs would remain liable for advanced costs as set forth on the Model Explanation. (E. Bechler Decl. in Supp. at 5, 6; E. Bechler Decl. in Opp'n at 5,6; P. Bechler Decl. in Supp. at 5,6; P. Bechler Decl. in Opp'n at 5,6; see Am. Compl. Ex. B; Macaluso Decl. 2.)

On or about July 16, 2003, Kylie Bechler, in her capacity as the duly appointed Personal Representative (hereinafter "PR") and executrix of the Estate of Steven Bechler, filed a civil action in the United States District Court for the Southern District of Florida against Cytodyne and others (hereinafter "Kylie Bechler Estate Wrongful Death Case"). (See Am. Compl. Ex. C at 1.) Kylie Bechler as PR was represented by a law firm from White Plains, New York, with a local office in Miami, Florida. The principal attorney was Jeffrey I. Carton from the White Plains office. (Compl. ¶ 23.)

In or about October 2003, a large judgment was entered in plaintiffs' favor in the Park Class Action against Cytodyne's successor, Nutraquest Inc. (hereinafter "Nutraquest") which included an award of attorney fees to Defendant Macaluso. (Compl. ¶ 31.)

In or about October 2003, Nutraquest filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. The Kylie Bechler Estate Wrongful Death Case was transferred to the District Court of New Jersey. (Am. Compl. Ex. C at 1; Campbell Decl. Re. Apr. 6, 2007 Letter at 6; Compl. ¶¶ 33, 39-41.) Attorney Carton continued to litigate the case for the Estate. (Compl. ¶ 41.)

In or about October 2004, a complaint was filed in the United States District Court for the District of New Jersey on behalf of Plaintiffs Ernest Bechler, Patricia Bechler, and "Michael"

Bechler against Nutraquest (hereinafter "the Ernest Bechler Case").[3]  Pro hac vice applications by

Defendant Macaluso and an associate were denied and the complaint was not prosecuted.

(Campbell Decl. Re: April 6, 2007 Letter at 7.)

On or about January 11, 2005, in connection with Plaintiffs' depositions in the Kylie

Bechler Estate Wrongful Death Case, a "Confidential Settlement Agreement" was negotiated with

the Estate and signed which in part provided that Plaintiffs, as potential beneficiaries of the Estate,

would collectively get 20 % of the net proceeds, after the fees and costs of the Estate.  (Compl. ¶¶

47, 49; Am. Compl. Ex. C at 1.)  The Bechlers agreed to " be responsible for paying the attorney

fees, if any, due to Todd Macaluso . . . solely out of their twenty percent (20%) recovery of the

Net Proceeds."  (Am. Compl. Ex. C at 2.)  The Bechlers further agreed to "discontinue their

pending suit against Nutraquest."  (Am. Compl. Ex. C at 3.)   Defendant Macaluso was involved

in the negotiation of this agreement.  (Compl. ¶¶ 47, 49; see Am. Compl. Ex. C.)

Defendant Macaluso on January 11, 2005, attended the depositions of Plaintiffs in the

Kylie Bechler Wrongful Death Case in Medford, Oregon.  The depositions were continued to

March 9, 2005, in Medford and Defendant Macaluso appeared by telephone.  (Compl. ¶¶ 50-51.)

In early 2006, a global and comprehensive settlement of pending litigation against

Nutraquest and Cytodyne was reached, which included the Kylie Bechler Estate Wrongful Death

Case.  (Compl. ¶ 55; Campbell Decl. Re:  Apr. 6, 2007 Letter at 6, 7.)

---

[3]  It is not clear procedurally whether the Ernest Bechler Case was ever pending in
bankruptcy court, either as an initial filing or as a transferred case.  (See Am. Compl. Ex. C at 2;
Campbell Decl. Re: Apr. 6, 2007 Letter at 7; Kiefer Decl. Ex. 2; Compl. ¶¶ 44-46).  However,
the court in which the Case was pending is not determinative of any issue raised in the motions.

The Ernest Bechler Case was dismissed in December 2006.  (Campbell Decl. Re: Apr. 6, 2007 Letter at 7; Compl. ¶ 45.)

Attorney Carton in January 2007 sent a check in the amount of $824,930.80 to Defendant Macaluso.  This represented 20 % of the net proceeds received to date after attorney fees and costs of the Kylie Bechler Wrongful Death Estate settlement received   The check was made out to Plaintiffs and Macaluso & Associates and was deposited in Defendant Macaluso's trust account. (Compl. ¶¶ 73-74.)

On February 12, 2007, Defendant Macaluso sent by federal express a trust account check in the amount of $299,520.78 made out to" Ernie Bechler, Pat Bechler & Mike Bechler" and an "accounting" in care of their Medford, Oregon, address.  (Compl. ¶¶ 76, 79.)  The "accounting" listed deductions taken from the $824, 920.80  check from attorney Carton.   This included a 40% attorney fee based on the final net amount expected to be received of $989,904.96, $78,438.04 in costs  and LA Funding Loan Interest of $51,000.   (Am. Compl. Ex. D.)  This check was returned by Defendants' bank as "NSF" and it was not until February 22, 2007, that Defendant Macaluso wired the funds to Plaintiffs' bank account to cover the NSF check.  (Compl. ¶¶ 77-78.)   Plaintiffs were concerned about the settlement accounting and on March 1, 2007, retained new counsel who wrote a demand letter to Defendant Macaluso on April 6, 2007, that, in part, terminated Defendant Macaluso as their attorney.  (Compl. ¶¶ 80-82; Campbell Decl. Re: Apr. 6, 2007 Letter at 2; Am. Compl. Ex. E.)   Plaintiffs' new attorney continued to investigate potential claims against Defendant Macaluso from early March 2007 to late June 2007.   (Campbell Decl. Re: Apr. 6, 2007 Letter at 2-10.)  Defendant Macaluso responded to this letter on May 2, 2007, and offered  as an "accommodation" to return certain amounts deducted for outside counsel and travel expenses

to the east coast and Florida. (Kiefer Decl. Ex. 2; Campbell Decl. Re: Apr. 6, 2007 Letter at 5-6.)

Plaintiffs on May 30, 2007, received a check for these expenses in the amount of $ 119,623.39.

(Compl. ¶¶ 84, 86; Campbell Decl. Re: Apr. 6, 2007 Letter at 5-6.) Plaintiffs returned this check

to Defendant Macaluso on May 31, 2007. (Compl. ¶ 87; Campbell Decl. Re: Apr. 6, 2007 Letter

at 8; Macaluso Decl. Ex. 1; Kiefer Decl. Ex. 4.)

Plaintiffs commenced this action by filing a verified complaint on May 27, 2008. (Dkt. #

1.)


## C. Merits of Motions

### 1. Contingent Fee Agreement

Plaintiffs in their first claim in the amended complaint and their motion for partial

summary judgment seek declaratory relief as a matter of law that the Agreement is void as

Defendants did not comply with ORS 20.340. Defendants move for partial summary judgement

contending they "substantially complied" with ORS 20.340 and that Plaintiffs have waived any

right to void the Agreement.[4]

ORS 20.340 provides as follows:

(1) In any civil action arising out of bodily injury, death or property damage,
including claims for emotional injury or distress, loss of care, comfort,
companionship and society, and loss of consortium, if an attorney for a plaintiff in
respect to any civil action enters into an agreement with the plaintiff whereby the
attorney receives as a fee a percentage of the amount of any settlement or judgment
awarded to the plaintiff:

---

[4] Defendants also argue that ORS 20.340 does not require that a signed copy of a
contingent fee agreement be provided. Plaintiffs concede this and contend they are not
claiming this is a ground to void the Agreement. This ground for Defendants' motion for
summary judgment is moot.

(a) The contingent fee agreement shall be written in plain and simple language reasonably believed to be understandable by the plaintiff.

(b) The attorney shall explain the terms and conditions of the agreement in compliance with a model explanation in plain and simple language prepared by the Oregon State Bar a reasonable time before the agreement is signed.

(c) The contingent fee agreements must contain a provision allowing the plaintiff to rescind the agreement within 24 hours after signing upon written notice to the attorney.

(2) Any contingent fee agreement entered into on or after September 26, 1987, that does not comply with the requirements of subsection (1) of this section is voidable.

The 1-20-96 Revision of the Model Explanation prepared by the Oregon State Bar

provides:

## Oregon State Bar Approved
## Explanation of Contingent Fee Agreement

This is an explanation of your Contingent Fee Agreement with us.  Please read it and sign it before you sign the Agreement.

The Contingent Fee Agreement says:

1. We agree to handle your case.

2. If we handle your case to completion and do not recover any money for you, you do not have to pay us for our services.

3. If we handle your case to completion and recover some money for you, you must pay us for our services.  Our fee will be a percentage of what we recover for you.  The percentage is set forth in the Contingent Fee Agreement.

4. If we advance money for filing fees, witness fees, doctors reports, court reporter's services or other expenses on your behalf, you must repay us whether the case is won or lost.

5. You may cancel the Contingent Fee Agreement by notifying us in writing within 24 hours after you sign.

6. If you cancel the agreement within the 24-hour period, you will have no obligation to us.

_____
Date

I have read the foregoing explanation before I signed a Contingent Fee Agreement with **[Name of Firm]**.

_____
Client's Signature

(Am. Compl. Ex. B.)

Page 13 - ORDER

The parties have not cited and the court has not found any Oregon cases discussing the phrase "in compliance with" set forth in ORS 20.340(1)(b). There is no dispute that Defendants did not provide the Model Explanation to Plaintiffs or have them sign it prior to signing the Agreement. Defendant Macaluso, however, contends that he orally explained the Agreement and Plaintiffs Ernest and Patricia Bechler confirmed this by the language above their signatures. Defendants therefore cite Oregon cases using the "substantial compliance" doctrine to avoid what Defendants term a "hyper technical result" when the "spirit" or "purpose" of the statue has been met. Plaintiffs argue the statute should be strictly construed and does not allow oral compliance.

"The doctrine of substantial compliance is used by Oregon courts 'to avoid the harsh results of insisting on literal compliance with statutory notice provisions where the purpose of these requirements has been met.'" State v. Vandepoll, 118 Or. App. 193, 196 (1993) (quoting Brown v. Portland Sch. Dist. No. 1, 291 Or. 77, 81 (1981)); Rogers v. Roberts, 300 Or. 687, 691-92 (1986); McComas v. Employment Dept., 133 Or. App. 577, 580 (1995). Application of the doctrine depends on the facts of each case. Rogers, 300 Or. at 691-92.

"Whether the doctrine of substantial compliance applies is a question of statutory interpretation." Tompte v. Stone, 195 Or. App. 599, 602 (2004). Examination of the text and context is the first and primary step. Id. The court may then examine pertinent legislative history useful to the court that a party may proffer, even though there is no ambiguity in the statutory text. Id.; State v. Gaines, 346 Or. 160, 171-72 (2009) (changing methodology of statutory construction set forth in Portland Gen. Elec. Co. v. Bureau of Labor and Indus., 317 Or. 606, 610-11 (1993)). Last, if the legislature's intent remains unclear, the court may look to general maxims of statutory construction. Tompte, 195 Or. App. at 602; Gaines, 346 Or. at 164-65, 172.

Page 14 - ORDER

Defendants point to Tompte 195 Or. App. at 602-03, as an example of a situation where the substantial compliance doctrine was not applied because the text of the statute at issue expressly required "complete compliance" with the notice requirements. The statute at issue in Tompte provided that the notice "shall state" the tenant must contact the landlord to arrange for removal of personal property "eight days after mailing of the notice." Additionally, it provided that "Complete compliance . . . shall constitute a complete defense . . . ." Id. at 602. The Oregon Court of Appeals found two different reasons for holding that the substantial compliance doctrine did not apply there, stating: "Not only does the statute require that defendant give plaintiffs 'eight days' to contact him 'after the mailing of notice,' but ORS 90.425(16) also requires 'complete compliance' with the notice requirements." Id. at 603. The court went on to state:

> We are "not to insert what has been omitted or to omit what has been inserted" when construing statutes. ORS 174.010. The legislature knows how to provide for substantial compliance of a statutory requirement when it decides that such a doctrine is appropriate, but it did not so provide in ORS 90.425.

195 Or. App. at 602-603 (citing ORS 250.085(1); ORS 279.029(6)(a)(A) as examples of statutes in which the legislature provided for substantial compliance with certain statutory requirements); see ORS 18.850; ORS 83.730; ORS 105.153.

The Oregon legislature mandated that certain procedures be followed by attorneys when entering into a contingent fee agreement with their client. These provisions are set forth in ORS 20.340 in mandatory language. The statute requires that the contingent fee agreement "shall" be written in plain and simple language. It requires that the attorney "shall explain" the contingent fee agreement "in compliance with" the Model Explanation prepared by the Oregon State Bar, and the agreement "must contain" a provision allowing a plaintiff to rescind the agreement within 24

Page 15 - ORDER

hours after signing.  ORS 20.340(1)(b)(c).  While ORS 20.340 does not include a provision that

complete compliance is a defense as did the statute in Tompte, it includes mandatory language

requiring compliance with the provisions as did the statute in Tompte and provides that any

contingent fee agreement that "does not comply with the requirements of subsection (1) of this

section is voidable," ORS 20.340(2).  It is noteworthy that the Vandepoll court, supra, found that

the statute at issue there did not provide that the notice "'shall contain,'" "'shall separately state,'"

or "'shall expressly state'" the material outlined in the statute but only required that the notice

"shall inform" the person of the material.  There, the court held that the substantial compliance

doctrine applied where the person was not explicitly informed that if the person did not request a

hearing within 20 days, the right was waived, where it was implicit in the notice given.

Vandepoll, 118 Or. App. at 195-97.

     The relationship between an attorney and client is a fiduciary one.  *In re* Staples, 259 Or.

406, 409 (1971); see Welsh v. Case, 180 Or. App. 370, 382 (2002).   The attorney holds a high

position of trust and should be held to a high standard in contracting.  The California Business and

Professions Code § 6147 addresses contingent fee agreements and includes provisions similar to

the requirements of ORS 20.340.[5]  Addressing section 6147, the California Court of Appeal in

---

[5] California Business and Professions Code § 6147 provides in pertinent part:
(a) An attorney who contracts to represent a client on a contingency fee basis
shall, at the time the contract is entered into, provide a duplicate copy of the
contract, signed by both the attorney and the client, or the client's guardian or
representative, to the plaintiff, or to the client's guardian or representative. The
contract shall be in writing and shall include, but is not limited to, all of the
following:
(1) A statement of the contingency fee rate that the client and attorney have agreed
upon.
(2) A statement as to how disbursements and costs incurred in connection with the
prosecution or settlement of the claim will affect the contingency fee and the

Page 16 - ORDER

<u>Alderman v. Hamilton</u>, 205 Cal. App.3d 1033, 1037 (1988), stated:

> Attorney fee agreements are evaluated at the time of their making and must be fair, reasonable and fully explained to the client. (Rules Prof. Conduct, rule 2107.) Such contracts are strictly construed against the attorney. In order to protect clients and to assure fee agreements are fair and understood by clients, the Legislature enacted numerous statutes specifically delineating the required contents of most attorney fee agreements. (Bus. & Prof. Code, 6146-6148.)

<u>Alderman</u>, 205 Cal. App.3d at 1037 (some citations omitted).

Considering the language of ORS 20.340, the court agrees with Plaintiffs that the statute should be strictly construed and that the substantial compliance doctrine does not apply. The court grants Plaintiffs' motion for partial summary judgment and denies Defendants' motion for partial summary judgment on this ground.

The court further finds that even if the substantial compliance doctrine applies, it was not met in this case. The Oregon legislature has made a policy decision to protect the public entering into contingent fee agreements in the State of Oregon and, to that end, has mandated that certain provisions need to be included in such agreements. Defendant Macaluso made the choice to enter

---

client's recovery.

(3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney.

(4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client.

(5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate.

(b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee.

. . . .

into the Agreement in Oregon. The Agreement entered into with Plaintiffs clearly does not contain two such mandated provisions. First, there is no right to cancel in 24 hours as specified in ORS 20.340(2), <u>supra</u>, and in paragraph 5 of the Model Explanation. The court does not agree with Defendants that the right to cancel "at any time" with payment of fees and costs, as set forth in the Agreement, is "more expansive" than the 24 hour right to cancel set forth in the Model Explanation which does not provide for the payment of fees and costs. The provision in the Agreement that a client who discharges the attorneys at any time "is immediately liable for all fees and costs incurred" is contrary to paragraph 6 of the Model Explanation, which provides that a client who cancels within the 24-hour period has "no obligation to us." (Am. Compl. Ex. A at 3, Ex. B.) Defendants also argue that Plaintiffs cannot show any "prejudice" because they did not attempt to cancel within 24 hours. ORS 20.340 does not require "prejudice" as a condition of voiding an agreement entered into in violation of the statute. It seems clear to this court that this 24 hour provision is intended to specifically advise the client that they can, without penalty, think about the agreement for a day and still cancel.

Second, the client in Oregon must remain liable for costs as set forth in Paragraph 4 of the Model Explanation. This is consistent with both Oregon Ethics Rules and case law. Or. Rules of Prof'l Conduct 1.5(a), 1.8(e); <u>Pringle v. Robertson</u>, 258 Or. 389, 393 (1970) <u>adhered to on reh'g</u>, 258 Or. 389 (1971). This court is not persuaded by Defendants' argument that because ethical rules in California, which apply to Defendant Macaluso, allow payment of costs, Paragraph 4 of the Model Explanation does not apply. Oregon has the right to regulate contingent fee agreements entered into in Oregon. The fact that a litigation loan was obtained from LA Funding or that Plaintiffs did recover and pay back costs does not eliminate the omission of Paragraph 4 in

Page 18 - ORDER

the Agreement.  The Agreement is, therefore, voidable.


Defendants contend that Plaintiffs should not be able to wait over five years, after Defendants have performed services and obtained a settlement for Plaintiffs to attempt to void the Agreement.  The court, however, finds no facts which would support an intentional waiver by Plaintiffs of a known right to void the Agreement.  Waiver requires some unequivocal manifestation and, therefore, inaction or the mere passage of time alone does not create a waiver.  See Hohman v. Bartel, 128 Or. App. 384, 387 (1994) (and cases cited).   In particular, there are no facts suggesting that Plaintiffs were aware of their right to void the Agreement before meeting with new counsel in March 2007.  They then took immediate action to terminate Defendant Macaluso by letter dated April 6, 2007; return the partial refund check on May 31, 2007; and seek to void the Agreement by filing the verified complaint.   The statute does not provide any time limit on the right to void an agreement entered into in violation of the statute.  The mere fact that the verified complaint was not filed until May 27, 2008, does not in and of itself support an intentional waiver.  This court does not find any other equitable principles which would preclude voiding the Agreement under the facts presented.

Plaintiffs' motions for partial summary judgment on the grounds that the Agreement is voidable and they elected to avoid the Agreement by filing the verified complaint are granted.


The court further finds that, even if the Agreement was not voided, Defendants did not obtain any recovery from anyone "liable to" Plaintiffs as a result of the death of Steve Bechler on February 17, 2003, as specified in the Agreement.   The court finds this claim

sufficiently alleged in Plaintiffs' First Claim for Relief for Declaratory Relief.  (Am. Compl. ¶¶ 21, 25, 26, 45, 47, 49, 51C-F, Prayer 1C-E.)  In the portion of the Agreement setting out the date, and Plaintiffs' names and contact information, the "DEFENDANT" is listed as "Cytodyne Technologies, Inc."  The only recovery in this case was by the PR for the Estate of Steve Bechler. It is undisputed that no recovery was obtained as a result of the Ernest Bechler Case although Defendants claim it was filed to get "leverage" on the PR.  Plaintiffs Ernest and Patricia Bechler were potential beneficiaries under Florida Law and would have been entitled to a recovery in an action brought by the PR.[6]  There is nothing in the Agreement that contemplates that Defendant Macaluso would be entitled to attorney fees and costs for pursuing a claim against the Estate.  The court does not agree with Defendants' argument that language in the Agreement that they would "take steps as are necessary and reasonably advisable to enforce Client's rights" for which they would receive a percentage "of the total amount recovered from any source of recovery" entitles Defendants to the fees claimed and deducted by them.  This language does not trump the foundational language of the Agreement as set out -- that Defendants would enforce Plaintiffs' claims against the persons or entities "liable to" Plaintiffs for the death of their son on February 17, 2003, specified as defendant Cytodyne.  Plaintiffs' motion for partial summary judgment on this ground is granted.

---

[6]  It appears Plaintiffs Ernest and Patricia Bechler, as parents of decedent Steve Bechler, and Mike Bechler if he could show that he was partly or wholly dependent on decedent, are "Survivors" under the Florida Wrongful Death Act who, as potential beneficiaries, could recover the value of lost support and services.  Fla. Stat. §§ 768.18, 768.21; see Fla. Stat. § 768.20 (personal representative of decedent shall bring action and recover for the benefit of decedent's survivors and estate).

Page 20 - ORDER

Accordingly, Defendants are not entitled to recovery of any fees or costs under the Agreement.  However, Plaintiffs agree that Defendants are entitled to reasonable compensation for services provided and expenses paid to benefit Plaintiffs on a quantum meruit basis. Defendants shall be allowed to allege this claim and put on proof at trial.  Rather than amend their answer, Defendants may allege quantum meruit and/or set off, as appropriate, in the parties' pretrial order.[7]

In light of the court's rulings relating to the Agreement, the court does not reach the issues raised in Plaintiffs' motion as to Plaintiff Mike Bechler.  Plaintiffs' motion for partial summary judgment in this regard is moot.

Further,  the court  rules that even if the Agreement was not voided, the  following sums set forth in the "accounting" from Defendant Macaluso were not properly deducted:

|   |   |   |
|---|---|---|
| a. | Client advancements | $20,000.00 |
| b. | Goldstein Isaacson, PC | $   983.40 |
| c. | Moore, Winter, Skebba & McLennan, LLP | $ 1,775.00 |
| d. | Waldt, Dean (bankruptcy attorney) | $34,781.33 |
| e. | Washington, Nancy - local counsel NY | $ 5,000.00 |

Defendants have acknowledged that the $20,000 client advancement and $5,000 fee to Nancy Washington were incurred in other litigation and were inadvertently deducted from the

---

[7] See separate scheduling order.

Page 21 - ORDER

Bechler Estate settlement.  Defendants further admit the $983.40 paid to Nancy Isaacson was for

"associate counsel" and should not have been deducted from the settlement.  The other amounts

are clearly covered by the Agreement provision which provides that, "Associate counsel may be

employed at the discretion of Attorneys at no additional expense to the Client."  (Am. Compl. Ex.

A at 2 ¶ 5.)   The court does not find that Defendants have raised a genuine issue of material fact

by arguing without support that some of these expenses were for "experts" pursuant to the

following provision of the Agreement:  "Attorneys may, in their discretion, employ . . . experts

whose fees shall be chargeable as advanced costs."  (Am. Compl. Ex. A at 2 ¶ 5.)  The court finds

on this record no ambiguity in the phrase "associate counsel" which clearly covers the law firm

charges at issue.  Plaintiffs' motions for summary judgment on these grounds are granted.


2.  <u>Non-Economic Damages for Emotional Distress in Claims for Fraud, Negligent</u>

<u>Misrepresentation, and Legal Malpractice</u>

Defendants contend that emotional distress damages are not allowed in the absence of

physical injury in Oregon and no exception to this general rule has been alleged.  They contend

also that Plaintiffs cannot recover emotional distress damages "where the legal interests at issue

are solely economic" relying in large part on <u>Hilt v. Bernstein,</u> 75 Or. App. 502, 515 (1985).

Defs. Mem. at 12.

The Oregon Court of Appeals has summarized the law relating to recovery of emotional

distress damages in <u>Bennett v. Baugh,</u> 154 Or. App. 397, 405 (1998), <u>aff'd in part, rev'd in part on</u>

<u>another ground,</u> 329 Or. 282 (1999):

The general rule in Oregon is that a person cannot recover for emotional distress in

Page 22 - ORDER

the absence of a physical injury.  Hammond v. Central Lane Communications
Center, 312 Or. 17, 22-23 [] (1991).  Physical injury is not required, however, in
three exceptional circumstances:  (1) there is a specific intent to inflict emotional
distress; (2) there is intentional misconduct by a person in a position of
responsibility and with knowledge that it would cause "grave distress;" or (3) there
is conduct that, even if negligent, infringes upon a "legally protected interest apart
from causing the claimed distress."  Id. See generally Curtis v. MRI Imaging
Services II, 148 Or.App. 607, 614 [] (1997), aff'd. on other grounds 327 Or. 9
(1998).  As to the third exception, "the critical inquiry becomes whether the kind of
interest invaded is of sufficient importance as a matter of policy to merit protection
from emotional impact."  Hilt v. Bernstein, 75 Or.App. 502, 515 [] (1985), rev.
den. 300 Or. 545 (1986).

The Hilt case, relied upon by Defendants, is distinguishable from the present case.  In Hilt,

plaintiff there alleged that, as a direct result of the legal negligence of her attorney who

represented her in her divorce proceeding, she was damaged in that she was "'made nervous and

emotionally upset by the loss of her home and the legal actions she was required to become

involved in.'"  75 Or. App. at 506, 508.  The Hilt court found that plaintiff's invaded interest was

solely an economic one and plaintiff could be adequately compensated by damages for the value

of her lost equity and related legal fees.  Therefore, her allegations of damages for emotional

distress were properly stricken.  See Bennett, 154 Or. App. at 406 (while court assumed attorney-

client relationship was separate legally protected interest, the underlying loss--personal liability

for corporation's debt--was chiefly economic and invasion was not of sufficient importance to

warrant award of emotional distress damages, citing Hilt).

Defendants' view of this case as a fee dispute which alleges economic loss only is too

narrow.  Plaintiffs claim more than an economic loss resulting from the distribution of settlement

proceeds.  The record shows that Plaintiffs and Defendants entered into an attorney-client

relationship to represent Plaintiffs' interests in the death of their son soon after his death when

Page 23 - ORDER

Plaintiffs were in a vulnerable position. Defendant Macaluso owes fiduciary duties and loyalty to Plaintiffs and is in a high position of trust as Plaintiffs' attorney. The court agrees with Plaintiffs that they present sufficient facts in the record which may satisfy an exception to the general rule so that they may proceed to trial. Plaintiffs allege, and support by affidavits, intentional misconduct by Defendant Macaluso who, as their attorney representing their interest in pursuing a wrongful death action for the death of their son, was a person in a position of responsibility and who would know that any misrepresentation or omission would cause Plaintiffs grave distress and, thus, the second exception to the general rule may be satisfied. See id. It appears that Plaintiffs present sufficient facts which also may satisfy the third exception. The Bennett case assumed that the invaded interest characterized as "'the client's right to rely on [the] attorney's unquestioned loyalty'" was sufficient to plead a separate legally protected interest. 154 Or. App. at 406; see Curtis v. MRI Imaging Servs. II, 148 Or. App. 607, 621 n.12 (1997), aff'd, 327 Or. 9 (1998) (court has not foreclosed possibility that existence of professional relationship could give rise to legally protected interest). The inquiry whether the invasion of a protected interest is of sufficient quality or magnitude is case specific. Id. at 621. In contrast to the facts in Hilt and Bennett, in this case, Plaintiffs allege and offer proof that their emotional distress resulted directly from the alleged misrepresentations made by Defendants arising in the attorney-client relationship. See Curtis, 148 Or. App. at 621-22 (invasion of protected interest in relationship between plaintiff patient and medical professional sufficient; damages suffered were direct consequence and not secondary consequence of some economic loss resulting from attorney's negligence, as in Hilt); Shin v. Sunriver Prepatory Sch., Inc., 199 Or. App. 352, 371-72 (2005) (special relationship between school and student recognized; emotional distress damages allowed

Page 24 - ORDER

for school's invasion of such interest).

The court has ruled assuming that no physical injuries are alleged or shown by Plaintiffs. Plaintiff Ernest Bechler in his declaration states that he suffered physical injuries in addition to mental distress as a result of Defendants' conduct alleged in Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims in their verified complaint and amended complaint, including anxiety, headaches, insomnia, depression, and hypertension or high blood pressure. (E. Bechler Decl. in Opp'n 21-22.) Plaintiffs Patricia Bechler and Mike Bechler make similar statements of injuries suffered by them as a result of Defendants' conduct in their declarations. (P. Bechler Decl. in Opp'n 20-21; M. Bechler Decl. in Opp'n 20-21.) Plaintiffs may well need to present expert testimony at trial to prove causation between some or all of their alleged physical injuries and Defendants' conduct. The court makes no ruling on that issue at this time since it has found that Plaintiffs may satisfy an exception to the rule that emotional distress damages are not recoverable in the absence of physical injury. Defendants' motion for partial summary judgment on this issue is denied.


3. Unfair Trade Practices Act ("UTPA") - Statute of Limitations

A plaintiff who seeks to recover under the UTPA must file its claim "within one year from the discovery of the unlawful method, act or practice." ORS 646.638(6). Defendants contend that Plaintiffs knew or should have known that there was a substantial possibility that they had suffered legally cognizable harm by at least April 2007 but did not file their claim until May 27, 2008. Plaintiffs argue they did not discover their UTPA claim until June 2007 or, at a minimum, there is a factual dispute as to the date of discovery to be resolved at trial.

Page 25 - ORDER

Under the discovery rule, the applicable statute of limitations begins to run when a plaintiff "'knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements [of legally cognizable harm] (harm, causation, and tortious conduct) exists.'" Widing v. Schwabe, Williamson & Wyatt, 154 Or. App. 276, 282-83 (1998) (quoting Gaston v. Parsons, 318 Or. 247, 256 (1994)); Greene v. Legacy Emanuel Hosp. & Health Care Ctr., 335 Or. 115, 123 (2002). A "mere suspicion" of a claim is insufficient to start the limitations period. Gaston, 318 Or. at 256. Significantly, "the rule delays the running of the limitations period only until the plaintiff knows or should know that *some* harm has been incurred and that *a* claim exists." Widing, 154 Or. App. at 283-84. This is an objective inquiry. Id. at 283. A plaintiff does not need to identify a particular theory of recovery or know to a certainty that each element of the claim exists. Gaston, 318 Or. at 255 & n.8.

Although this court is aware that the date of discovery can often be a jury question, Widing, 154 Or. App. at 283, the court finds on this record that no reasonable jury could find that the UTPA claim was not discovered by at least the date of Plaintiffs' demand letter of April 6, 2007. (See Am. Compl. Ex. E.) This multiple-page letter is extremely detailed and sets forth factual allegations of the core elements of the UTPA claim alleged by Plaintiffs, including allegations that Defendant Macaluso had: made representations that Plaintiffs had standing to file suit for the wrongful death of Steve Bechler and failed to disclose that Defendants' services were consequently "worthless and a nullity" (Ex. E at 1-2; Am. Compl. ¶¶ 78A & F), made misrepresentations concerning Defendants' status in the Kylie Bechler litigation (Ex. E at 1-2; ¶¶ 78B-D), and made misrepresentations about the cost of the goods and services that Defendants

Page 26 - ORDER

provided to Plaintiffs (Ex. E at 2, 4-5; ¶ 78E).  The April 6, 2007, letter is properly before the court.  Initially, it is attached to Plaintiffs' amended complaint.  Fed. R. Civ. P. 10(c).  Second, Federal Rules of Evidence 408 does not preclude the use of a settlement letter for other purposes. 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5312 (1980).

Plaintiffs rely on Uruo v. Clackamas County, 166 Or. App. 133 (2000), in arguing that, although counsel had drafted and sent the April 6, 2007, letter, he and his assistant "had not conducted any thing but a very preliminary investigation of the facts and the law as to the existence of any tort claims held against the Defendants, and that any statements contained in the initial settlement letter of April 6, 2007, as to the facts of the existence of claims, were 'mere suspicions' at the time of this letter," (Pls. Resp. & Opp'n  26; Campbell Decl. Re: Apr. 6, 2007 Letter), and they discovered their UTPA violation claims on June 29, 2007.

The Uruo case is distinguishable.  In Uruo, the court found that, although plaintiff's counsel had given tort claim notice to the City, a fact finder could reasonably conclude this fact did not mean plaintiff had sufficient information to say the claim had accrued, based on counsel's affidavit that he had sent the tort claim notice as a precautionary measure; he had done little or nothing in the way of investigation and had made no judgment whether plaintiff had a claim; and, after reviewing the police reports and consulting with experts, he had concluded that the City had not been negligent and did not know otherwise until he deposed City police officers.[8]

Here, Plaintiffs' counsel in his declaration characterizes his investigation up to April 6,

---

[8] The court went on to find that plaintiff should have been aware of a substantial possibility he had a tort claim against the City based on information in police reports which should have put him on notice to further inquire and, therefore, the statute of limitations had run by the time the complaint against the City was filed.

Page 27 - ORDER

2007, as "an initial and very preliminary investigation" into the fee dispute over the $525.400.02

retained by Defendants out of the settlement proceeds. (Campbell Decl. Re: Apr. 6, 2007 Letter at

2, 4.) Significantly, however, he states that in March 2007 he spoke with Mr. Carton, the

attorney representing the PR, Kylie Bechler, who told him that Defendants had never recovered

any moneys from Cytodyne or its successor, Nutraquest, from any wrongful death action filed on

behalf of Plaintiffs, that the settlement amount she had obtained was under a global settlement in

the Nutraquest bankruptcy case in New Jersey, and that neither Defendant Macaluso nor his law

firm had provided much if any assistance in the prosecution of Kylie Bechler's wrongful death

action. (Campbell Decl. Re: Apr. 6, 2007 Letter at 2-3.) This information was reported to

Plaintiffs. Counsel further states that at the time of the April 6, 2007, letter, Plaintiffs had already

been "stunned" by Defendants' retention of $525,400.02 out of the $825,920.80 settlement

proceeds. (Campbell Decl. Re: Apr. 6, 2007 Letter at 5.)    Although counsel declares that his

statement of claims in the April 6, 2007, demand letter were, at best, "mere suspicions" based on

his preliminary investigation (Campbell Decl. Re: Apr. 6, 2007 Letter at 4), the information

counsel had obtained in his investigation, which information was reported to Plaintiffs, was

sufficient to put counsel and Plaintiffs on notice of a substantial possibility Plaintiffs had suffered

legally cognizable harm. See Benson v. Oregon, 196 Or. App. 211, 217 (2004) ("An agent's

knowledge acquired within the scope of the agency is imputed to the principal, regardless of

whether the agent actually communicates that knowledge to the principal."); Bramel v. Brandt,

190 Or. App. 432, 441-42 (2003). While it may have been professionally appropriate for counsel

to conduct further investigation before filing the UTPA claim, the statute of limitations began to

run at least by April 6, 2007, and the UTPA claim was not filed until May 27, 2008. Defendants'

Page 28 - ORDER

motion for partial summary judgment on the UTPA claim is granted; Plaintiff's UTPA claim is dismissed.

4. Causal Link Between Allegations In Support of Fraud, Negligent Misrepresentation and UTPA Claims

Plaintiffs as a part of their Fraud Claim allege various material representations and material omissions by Defendant Macaluso in inducing them to sign the Agreement and in continuing to allow him to represent their interests.[9] Defendant Macaluso denies any such acts and omissions.  Defendants move for summary judgment on this claim arguing that, even if the acts and omissions alleged by Plaintiffs are true, there is no causal link between the alleged misrepresentations and the damages sought by Plaintiffs in what Defendants characterize as a "fee dispute" over the accounting provided to Plaintiffs.  Defendants set out the elements of Fraud as follows:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; 7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

Conzelmann v. Northwest Poultry & Dairy Prods. Co., 190 Or. 332, 350 (1950).  A failure to prove any element is fatal to the claim.  Id.  Defendants address only the causation element.

The court has reviewed all of the allegations of specific fraud in the amended complaint. Plaintiffs allege in paragraph 56 of the amended complaint as follows:

---

[9] Plaintiffs allege twenty-eight specific allegations of material representations and material omissions in thirteen pages in their amended complaint.

Page 29 - ORDER

The representations made by the Defendants to the Plaintiffs were material to the Plaintiffs' decision to entering into the contractual relationship with the Defendants with regard to the representation of the Plaintiffs as to certain alleged claims arising out of the wrongful death of Steve Bechler and the right of the Plaintiffs to receive a portion of certain wrongful death action proceeds from the Estate of Steven Scott Bechler because of the Plaintiffs' status, as the parents and brother of Steve Bechler, and with regard to the Plaintiffs' decision to allow the Defendants to continue this representation of their interest in these matters until March 1, 2007.

Plaintiffs further allege in paragraph 60 as follows: "Plaintiffs relied upon the truth of the representations made by the Defendants in entering into the contractual relationship with the Defendants and in allowing the continuation of their representation of their interest as to the subject matters of this representation until March 1, 2007." Finally, Plaintiffs allege in paragraphs 62, 63, and 64 suffering economic damages in the amount of $525,400.02 and $80,223.36; and emotional distress damages for "mental distress, anxiety, humiliation, headaches, nightmares, and other physical and mental injuries." They also seek punitive damages.

This court finds that these allegations, as supported by the verified complaint and Plaintiffs' declarations, are sufficient and Defendants have not presented any facts or arguments that convince the court that, as a matter of law, Plaintiffs cannot prove that some or all of these allegations, if proved, was a substantial factor in directly causing the damages claimed by Plaintiffs. Again, Defendants' view of this case as only a fee dispute is too narrow. Defendants' motion for summary judgment as to Plaintiffs' Fraud claim is denied.

5. Punitive damages

Although the court has dismissed Plaintiffs' UTPA claim, their Fraud claim remains for trial. Defendants' motion for partial summary judgment dismissing Plaintiffs' punitive damages

Page 30 - ORDER

claim is granted as to Plaintiffs' UTPA claim and denied as to their Fraud claim.

## **ORDER**

Based on the foregoing, it is ordered that Defendants' motion for partial summary

judgment [#90] is granted in part and denied in part, and Plaintiffs' motion for partial summary

judgment [#120] is granted in part and denied as moot in part.

DATED this ___*14*___ day of  May, 2010.

_____
UNITED STATES MAGISTRATE JUDGE